**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **ELLEN ELSNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:19-cv-02517-SNLJ** |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM AND ORDER</u>

The Commissioner of the Social Security Administration denied plaintiff Ellen

Elsner's applications for disability insurance benefits and supplemental security income

benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Elsner now seeks judicial review.

The Commissioner opposes the motion. The issues being fully briefed, and for the

reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

## I.      Procedural History

Elsner's application was denied at the initial determination level.  She then

appeared before an Administrative Law Judge ("ALJ").  The ALJ found Elsner is not

disabled because her symptoms were not supported by the medical evidence available.

Elsner then filed a request for review of the ALJ's decision with the Appeals Council of

the Social Security Administration, which was denied.  Thus, the decision of the ALJ

stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

Elsner now seeks review by this Court pursuant to 42 U.S.C. § 405(g); *see also* 42 U.S.C.

§ 1383(c)(3).

## II.     Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A

claimant has a disability "only if his physical or mental impairment or impairments are of

such severity that he is not only unable to do his previous work but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]"  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether

the claimant has a disability.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the

Commissioner considers the claimant's work activity.  If the claimant is engaged in

substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the

Commissioner looks to see whether "the claimant has a severe impairment [that]

significantly limits [the] claimant's physical or mental ability to do basic work activities."

*Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to

a slight abnormality that would not significantly limit the claimant's physical or mental

2

ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's

"complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

## III.   The ALJ's Decision

At Step One, the ALJ found Elsner met the insured status requirements through September 30, 2016, and had not engaged in substantial gainful activity since December 27, 2013. (Tr. 14). At Step Two, the ALJ found Elsner suffers from three medically determinable impairments: (1) degenerative disc disease; (2) degenerative joint disease;

4

and (3) obstructive sleep apnea. (Tr. 14). At Step Three, the ALJ concluded Elsner does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 15).

Next, in beginning the analysis of Step Four, the ALJ determined Elsner's RFC.[1] The ALJ found that Elsner

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she is unable to climb ramps, stairs, ladders, ropes, or scaffolds, and crawl, but she can occasionally kneel, stoop, [and] crouch. She is unable to reach overhead with her left (non-dominant) arm. She is to avoid extreme vibrations, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery.

(Tr. 15).  As part of this determination, the ALJ found Elsner's allegations about her physical symptoms' intensity, persistence, and limiting effects were not consistent with the medical records when considered as a whole. (Tr. 18). The ALJ chronicled the opinions of several medical providers over a period of roughly three years, all of whom noted minimal-to-moderate symptoms of the back, neck, shoulders, hip, hands, and feet. (Tr. 16-18). Providers frequently noted the "mild or moderate degree" of limited motion, the "moderate difficulties" in fine finger movements (such as buttoning a shirt), the "mild" and "moderate" arthritic changes, and the "minimal dextroscoliosis of the lumbar spine." (Tr. 16-17). One doctor, towards the end of the relevant treatment period in late 2018, even concluded in a musculoskeletal exam that Elsner "appear to [have] no

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

restriction" and only "mild limitation of the right hip with regard to internal and external rotation, although there is mild discomfort." (Tr.  17, 757). But, another consultative provider looked at a series of records and concluded Elsner should be limited to sedentary work because of notable, long-term "difficult[y] in movement." (Tr. 17-18, 127). Ultimately, taking the record as a whole, the ALJ felt Elsner's symptoms were serious enough to limit her to sedentary work but found nothing in the record to suggest she was further limited or outright disabled. (Tr. 19).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Elsner could perform her past relevant work in light of her designated RFC. The ALJ determined Elsner is able to perform past relevant work as an "admissions clerk" and "receptionist." (Tr. 19). In doing so, the ALJ relied on "the credible testimony of [a] vocational expert." The ALJ did not reach Step Five, but instead concluded upon Step Four that Elsner is not disabled. (Tr. 19).

IV.    **Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's

determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## V.   Discussion

Elsner seeks remand on three issues. First, she says the ALJ "fails to explain the evidence which supports the RFC" and, instead, is reversibly "conclusory" in tone. Second, she says the ALJ erred in disregarding her subjective complaint based on contrary "medical evidence." And third, she says the ALJ gave too much weight to the opinions of one of the consultative providers who "did not get a chance to review" the entire record before rendering an opinion.

### A.  The RFC was Based on Sufficient Evidence

Somewhat perplexingly, Elsner begins by pointing out how the ALJ assigned an RFC limited to "sedentary weight" while another provider, Dr. Louis Fuchs, allegedly concluded that Elsner "could perform light work, which is not consistent with the sedentary RFC." It is curious why Elsner would point out a provider's opinions that strengthens the case that Elsner is not disabled—the ALJ assigned a more restrictive RFC than Fuchs urged. In any event, Fuchs' opinions, which came in the form of a medical source statement, were heavily discounted because they were conclusory and did not cite supporting evidence. (Tr. 18, 928-937). An ALJ does not err in discounting conclusory

7

opinions found in medical source statements. *See Chesser v. Berryhill*, 858 F.3d 1161, 1165 (8th Cir. 2017) (citing Julin v. Colvin, 826 F.3d 1082, 1089 (8th Cir. 2016).

Elsner also points to a litany of records showing things like "decreased strength," "tenderness to palpitation," "neck and upper back stiffness," and "hypertonicity." But, none of these points, considered in a vacuum, determine whether Elsner is disabled—and it is unconvincing to simply cherry-pick favorable records. The record further reflects, as late as October 2018, that there "appears to be no restriction" in Elsner's musculoskeletal system, with only "minimal limitation" and "mild discomfort" to Elsner's hips. (Tr. 757). In fact, doctors were concerned that Elsner seemed more concerned about her disability case than treatment. One doctor noted how he was the "third orthopedic opinion" Elsner sought and wrote: "I think she is interested in documentation for her disability determination and that seems to be more of a priority than orthopedic treatment." (Tr. 757). For reasons unknown, a few doctors were apparently even refusing to see Elsner by that point. (Tr. 756). On other occasions, it was remarked that Elsner was occasionally non-complaint with treatment. (Tr. 597). X-rays, meanwhile, showed only "minimal dextroscoliosis of the lumbar spine" and "mild multi-level lumbar degenerative disc disease." (Tr. 449, 844). And several doctors concluded that, at worst, Elsner would only be mild-to-moderately limited. (Tr. 124-128, 554, 558, 757, 928-933). The total record is clearly filled with evidence on both sides.

But even so, each of the functional limitations imposed by the RFC possesses a logical basis. Sedentary work primarily involves sitting and is restricted to lifting 10 pounds or less, 20 C.F.R. §§ 404.1567(a), 416.967(a), which comports with providers'

repeated insistence that Elsner avoid heavy lifting and standing for long periods of time (Tr. 353, 356, 358-359, 362, 368, 371, 374, 377, 380, 383, 386, 390, 396, 399, 402, 405, 408). The RFC restricts Elsner's ability to climb and crawl, which matches her complaints about hip and back pain. The RFC says Elsner can only "occasionally" kneel, stoop, and crouch, which reflects Elsner's own testimony that she would need breaks between doing dishes and cooking because of the constant "bending over and lifting up." (Tr. 90-92). Finally, it limits Elsner from working with moving and/or hazardous machinery, working from unprotected heights, and engaging in activity that involves extreme vibration, which all—again—are designed to compensate for the limitations Elsner has with her hips, arms, and back.

Undoubtedly, the ALJ believed Elsner has profound difficulties, and there are certainly instances in the record supporting the notion that Elsner was substantially limited. (Tr. 539). The very act of limiting a claimant to "[s]edentary work [is] a significant limitation, which reveals that the ALJ did give some credit to [Elsner's arguments]." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). But, the question at hand is whether Elsner was limited to a degree greater than her designated RFC for sedentary work. And, in that respect, this Court has made clear that the ALJ is "under no such compulsion" to "discuss or otherwise rely upon records [Elsner] believes are beneficial to her." *Smith v. Berryhill*, 2019 WL 3253177 at *4 (E.D. Mo. Jul. 19, 2019). Rather, the ALJ must determine "the appropriate weight and credibility given to the medical records in total," which are "often conflicting as between providers." *Id.* And so long as the ALJ's conclusions are supported by substantial evidence, and in this case they

9

were, this Court will not "second-guess the ALJ" even in the face of opposing evidence. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Accordingly, Elsner's first point is denied.

### B. Elsner's Subjective Complaints Were Properly Disregarded

Elsner argues next that the ALJ "fail[ed] to set forth a legally sufficient rationale supported by the evidence to justify concluding [that she] was not credible," which is essentially a retreading of her criticisms in Section A, above. The ALJ discredited Elsner's subjective complaints of disabling pain because "treatment notes indicate, at best, ailments that appear troublesome but do not impose limitations of such significance as to preclude sustained competitive employment." (Tr. 18). The ALJ went on to say that "none of the claimant's treating physicians has ever recommended that she not seek employment," pointed out the relatively benign x-rays, and took special note of records from 2018 that indicated Elsner "appeared to have no restrictions." (Tr. 18, 757).

In evaluating a claimant's subjective complaints of pain, the ALJ must consider

objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions.

*Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ "need not explicitly discuss each factor," *Schwandt*, 926 F.3d at 1012, and the Court "will defer to credibility determinations that are supported by good reasons and substantial evidence." *Id*.

10

In essence, subjective complaints must yield to the totality of evidence when that evidence is simply incongruent with a claimant's allegations. And that is what happened here. The objective evidence—such as x-rays—showed only mild-to-moderate limitations, several doctors were under the similar impression that Elsner was only mild-to-moderately limited, Elsner exacerbated her own problems by being occasionally non-complaint with treatment, and at least one doctor suspected Elsner's primary motivation was seeking disability benefits. (Tr. 124-128, 449, 554, 558, 597, 757, 844, 928-933). This is plenty of justifiable reason for discounting a claimant's subjective complaints of disabling pain. *See Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (ALJ appropriately discounted claimant's subjective complaints where objective evidence was inconsistent with allegations, claimant appeared motivated to seek disability benefits, and claimant was non-complaint with suggested treatment). The ALJ did not err in this respect.

### C.  The ALJ did not Err in the Evaluation of State Agency Consultative Opinions

For Elsner's final point, she takes issue with the ALJ's handling of consultative expert, Dr. Janna Crosnoe, at Step Four. She says "[t]he decision said the findings of Dr. Crosnoe were consistent with the RFC, so it is clear some if not great weight was afforded to Crosnoe's opinion … but the ALJ is required to do more than just state the amount of weight an opinion is being afforded, they must ***explain why the opinion merits the amount of weight it is given***." (emphasis added). Elsner points to a variety of records, such as "medical evidence from 8/18/16," that Crosnoe apparently did not consider—

11

some coming after Crosnoe rendered her opinion—which Elsner says should have given

the ALJ pause before so heavily relying on Crosnoe.

Elsner's criticism carries more force in the context of a ***treating provider***. The

regulations state that the agency will "always give ***good reasons*** in our notice of

determination or decision for the weight we give your ***treating source's medical***

***opinion***." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added). But, in the

context of a non-treating, consultative provider, like Crosnoe, the ALJ need only

"***explain*** in the decision the weight given to the opinions." 20 C.F.R. § 404.1527(e)(2)(ii)

(2012); 20 C.F.R. § 416.927(e)(2)(ii)(2012); *see also Bankhead v. Berryhill*, 2019 WL

183970 at \*6 (E.D. Mo. Jan. 14, 2019).

Elsner focuses much of her attention on *Willcockson v. Astrue*, in which the Eighth

Circuit reversed an ALJ's decision that failed to explain the weight given to a state

consultative expert. 540 F.3d 878, 880 (8th Cir. 2008). That case is distinguishable. The

Eighth Circuit made clear that it would not reverse "based on an arguable deficiency in

opinion-writing technique." *Id*. Rather, reversal is required only when "we cannot

determine from the written decision whether the ALJ properly reviewed the evidence."

*Id*. at 879-880. In *Willcockson*, The ALJ had failed not only to explain the weight given

to a consultative expert, but had also failed to acknowledge whatsoever various third-

party statements from the claimant's family and had seemingly rendered a medical

opinion about the "expected severity" of the claimant's condition. *Id*. at 879-881. These

combined errors were too much for the Eighth Circuit, which noted that the question of

reversal was "close" and that any error "individually might not warrant remand." *Id*. at

880. But, after "hav[ing] not located supporting evidence in the record," the Eighth Circuit concluded there was "sufficient doubt about the ALJ's rationale" that reversal and remand was warranted for further clarification. *Id*. at 881.

*Willcockson* is a far cry from what exists, here. The record reveals that the ALJ utilized Crosnoe's opinions only to the extent they buttressed the ALJ's independent understanding of the total record—Crosnoe's conclusions were not adopted wholesale based on an incomplete review of the record, but were instead adopted to the extent they were corroborative evidence. In fact, the ALJ rejected some of Crosnoe's opinions as inconsistent with the total record. As Elsner points out, Crosnoe opined that "reaching with the <u>right</u> upper extremity in front and/or laterally and overhead was limited." (emphasis added) Whereas, the RFC explained that Elsner "is unable to reach overhead with her <u>left</u> (non-dominant) arm." Elsner says "the decision contains no explanation of the failure to include any limitation in reaching with the right arm." Of course, the ALJ is "not require[d] to mechanically list and reject every possible limitation." *Nash v. Comm'r, Soc. Sec. Admin*., 907 F.3d 1086, 1091 (8th Cir. 2018). But, a look at the evidence shows that Elsner, herself, complained to the ALJ of limitations with her left arm—something the ALJ then incorporated into the RFC. (Tr. 88-89).

And what about the "medical evidence from 8/18/16" that Elsner says Crosnoe missed? It indicated that Elsner had bilateral myalgia, with the "right more painful than the left" but the "left weaker than the right." (Tr. 587). That record was from 2016, of course, and indicated a "good" prognosis. It was given correspondingly less weight in view of the much-more recent testimony by Elsner herself, in October 2018, that it was

13

the "left side" giving her the most trouble at that point. (Tr. 88-89). Based on this, the

ALJ did not err in adding only a left-arm limitation to Elsner's RFC—and, in fact,

demonstrated particular care in distinguishing Crosnoe's opinions from the total record.

So, while it might be said that the ALJ failed to adequately explain why Crosnoe

was given "great weight"—the opinion is drafted in a way that does not make it

immediately clear—that criticism ultimately falls on an "arguable deficiency in opinion-

writing technique." *Willcockson*, 540 F.3d at 880. It is clear that the ALJ looked to

Elsner's subjective complaints and other provider records, both that supported and

subtracted from Crosnoe's opinions, in fashioning an RFC. There is, unlike *Willcockson*,

no lingering mystery about the ALJ's rationale. Crosnoe carefully chronicled a series of

medical records up to the date of her opinion, which the ALJ appears to have also relied

on, and the ALJ thereafter clearly considered post-opinion evidence that continued to

show that Elsner was functionally capable of sedentary work. (Tr. 126-127). For

example, the ALJ highlighted the opinions of another provider who, as of September 19,

2018, "reported that the claimant appeared to have no restrictions." (Tr. 18, 757). In fact,

that same provider even mentioned that "I think she is interested in documentation for her

disability determination and that seems to be more of a priority than orthopedic

treatment." (Tr. 757). If any error was committed, then, it was harmless. *Lockwood v.*

*Colvin*, 2014 WL 11394979, at *2 (W.D. Mo. Sept. 4, 2014), *aff'd*, 627 F. App'x 575 (8th

Cir. 2015) (affirming ALJ's decision, which did not explain weight given to consultative

expert's opinions, where the record did not reveal unexplainable inconsistences between

that opinion and the ALJ's RFC); see also *Gonzalez v. Berryhill*, 2017 WL 1048049 (1st

14

Cir. 2017) (acknowledging ALJ's failure to explain weight given to opinions of consultant, but found that reversal was not required because "it is plain that the ALJ relied on those opinions in her decision and gave them great weight"); *Moradvan v. Apfel*, 243 F.3d 548 (9th Cir. 2000) (concluding that "ALJ's failure to articulate or explain the weight" given to consulting physician was "harmless error"); *Rivera v. Colvin*, 2013 WL 2433515 at *5 (E.D.N.C. June 4, 2013) (failure to explain weight given to treating physician was harmless error where nothing "materially contradicted" the evidence adopted that supported the ALJ's RFC determination). There being no uncertainty, here, about the ALJ's rationale in choosing the designated RFC, the Court holds that the ALJ did not commit reversable error in failing to "explain" the weight assigned to Crosnoe's opinions.

## VI.   Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017). Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff Ellen Elsner's complaint (ECF #1) is **DISMISSED with prejudice**. A separate judgment accompanies this Order.

So ordered this 10th day of July 2020.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE